UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

KEVIN LAMAR BLAKE,

Plaintiff,

v. Case No. 3:21-cv-81-HES-JBT

LT. HARRELL, et al.,

Defendants.

---

# ORDER

## I. Status

Plaintiff Kevin Lamar Blake, an inmate in the custody of the Florida Department of Corrections (FDOC), initiated this action on January 21, 2021, by filing a pro se Civil Rights Complaint (Doc. 1) under 42 U.S.C. § 1983. Plaintiff sues seven Defendants in their individual capacities – Lieutenant Harrell, Sergeant Stokes, Sergeant Dimauro, Officer Nash, Officer Thady, Officer Burnette, and Officer Shaw. Id. at 2-4. Plaintiff alleges that Defendants violated his rights under the Eighth and Fourteenth Amendments. See generally id. As relief, he requests declaratory relief as well as compensatory and punitive damages. Id. at 7.

This cause is before the Court on Defendants' Motion for Partial Summary Judgment[1] (Motion; Doc. 37) with exhibits (Docs. 37-1 through 37-14; Docs. 39-1 through 39-2). The Court advised Plaintiff that the granting of a motion to dismiss or motion for summary judgment would represent a final adjudication of this case which may foreclose subsequent litigation on the matter and allowed Plaintiff to respond to any dispositive motion. See Doc. 6; see also Doc. 36. Plaintiff filed a Response. See Doc. 58. The Motion is ripe for review.

## II. Plaintiff's Complaint

Plaintiff alleges that on January 2, 2019, while housed at Suwannee Correctional Institution, he was standing at his cell door listening as other inmates made loud noises and disturbed the quad. Doc. 1 at 7. According to Plaintiff, during the disturbance, Defendant Burnette entered Plaintiff's quad and advised the inmates to step away from their cell doors. Id. Plaintiff asserts he immediately tried to heed Burnette's instruction, but Burnette approached Plaintiff's cell and advised Plaintiff he was on property restriction. Id. Plaintiff contends that Defendant Nash arrived to help Burnette place Plaintiff on property restriction. Id. at 8. Plaintiff claims that he was asked to strip down

[1] Although the Motion is titled as a "partial" summary judgment, the Motion seeks dismissal of all claims, and thus referring to the Motion as "partial" seems to be a typographical error.

to his underwear and submit to hand restraints. Id. He alleges that Nash removed Plaintiff from his cell and had Plaintiff kneel on the ground, so Nash could watch Plaintiff as Burnette conducted a cell search. Id.

According to Plaintiff, Burnette and Defendant Thady searched Plaintiff's cell, during which they threw out Plaintiff's state issued and personal property. Id. Plaintiff claims that during the search, Thady stated, "If it was me I'd put him on strip." Id. Upon hearing that threat, Plaintiff immediately lay flat on the floor outside his cell, and as Plaintiff did that, "Nash placed, to Plaintiff's knowledge, his knee in [Plaintiff's] back and applied pressure." Id. He asserts that several other officers then entered the quad to assist with the use of force. Plaintiff claims officers placed him in leg restraints and Defendant Stokes and another officer picked Plaintiff up and carried him into his cell and placed him face down on the front bunk. Id. Plaintiff contends that the officers then exited the cell and left Plaintiff in his cell with hand and leg restraints still on and while wearing only his underwear. Id.

According to Plaintiff, he declared a psychological emergency, moved his arms so that his hand restraints were to the front of his body, and explained to the use-of-force camera that officers had illegally placed him on property restriction and he needed to see mental health because he was suicidal. Id. Plaintiff argues that he told Defendant Harrell that he was not refusing to comply with orders to remove the shackles and place his hand restraints back

behind his back, but he first needed assurance that if he did so, he would receive mental health care. Id. at 9. When Harrell denied Plaintiff's mental health request, Defendant Dimauro administered three bursts of chemical agents into Plaintiff's cell as Defendant Stokes held a shield. Id. Plaintiff then took a decontamination shower and was escorted to medical for a post-use-of-force exam. Id.

After the exam, Plaintiff was escorted back to his cell, submitted to removal of the leg restraints, and walked into his cell. Id. Plaintiff argues that he again refused to submit to the removal of his hand restraints, advising officers that they needed to address his psychological emergency first. Id. He claims that Harrell again denied Plaintiff mental health care. Id. According to Plaintiff, everyone except Defendant Shaw then left the quad, and Shaw persuaded Plaintiff to surrender the hand restraints but his psychological emergency was never addressed. He claims he was placed on a 72-hour property restriction and argues that he was never issued a disciplinary report to justify the restriction. Id.

Plaintiff claims that Defendants' use of chemical agents, failure to intervene in the use of chemical agents, and deliberate indifference to his psychological emergency violated his rights under the Eighth Amendment. Id. at 3, 6. He also claims that Defendants violated his Fourteenth Amendment due process rights when they ordered a 72-hour property restriction without

issuing a disciplinary report justifying the punishment.[2] Id. at 3, 6. He asserts that because of Defendants' conduct, he experienced sleep deprivation, was unjustly exposed to chemical agents, and suffered two small abrasions on his inner left and right ankles. Id. at 7.

## III. Defendants' Motion

Defendants raise five arguments in their Motion: (1) Plaintiff failed to exhaust his administrative remedies; (2) Plaintiff cannot prove a constitutional violation; (3) Plaintiff's request for damages is barred because he cannot prove a physical injury; (4) Defendants are entitled to qualified immunity; and (5) the Eleventh Amendment bars any claim for damages against Defendants in their official capacities. See generally Doc. 37

When a defendant raises a failure-to-exhaust defense in a motion for summary judgment, the Court must treat the motion as a motion to dismiss, because the determination of whether an inmate exhausted his available administrative remedies is a matter of abatement. Bryant v. Rich, 530 F.3d 1368, 1374-75 (11th Cir. 2008). For the reasons below, the Court finds that Plaintiff failed to exhaust his administrative remedies prior to filing this case.

[2] Plaintiff also references "equal protection." See Doc. 1 at 6. Because the Complaint does not appear to raise a separate equal protection claim, it appears Plaintiff, when raising his due process claim, simply listed other rights afforded under the Fourteenth Amendment.

As such, the Court need not address Defendants' summary judgment arguments.

## IV. Law

The PLRA requires that Plaintiff exhaust his available administrative remedies before pursuing a § 1983 claim about prison conditions. See 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted."); see also Woodford v. Ngo, 548 U.S. 81, 92-93 (2006) (noting that a prisoner must exhaust administrative remedies before challenging the conditions of confinement, and concluding that the PLRA demands "proper exhaustion"). Nevertheless, Plaintiff need not "specially plead or demonstrate exhaustion in [his] complaint[]." See Jones v. Bock, 549 U.S. 199, 216 (2007). Instead, the United States Supreme Court has recognized that "failure to exhaust is an affirmative defense under the PLRA[.]" Id.

Importantly, exhaustion of available administrative remedies is "a precondition to an adjudication on the merits." Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008); see also Jones, 549 U.S. at 211. The Supreme Court has instructed that while "the PLRA exhaustion requirement is not jurisdictional[,]" Woodford, 548 U.S. at 101, "exhaustion is mandatory . . . and unexhausted claims cannot be brought," Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017) (per curiam) (citing Jones, 549 U.S. at 211). Not only is there

a recognized exhaustion requirement, "the PLRA . . . requires proper exhaustion" as set forth in applicable administrative rules and policies of the institution. Woodford, 548 U.S. at 93.

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)."

Id. at 90 (citation omitted). Indeed, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]" Id.

In Ross v. Blake, the Supreme Court instructed that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement. The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" 136 S. Ct. 1850, 1862 (2016). For an administrative remedy to be available, the "remedy must be 'capable of use for the accomplishment of [its] purpose.'" Turner v. Burnside, 541 F.3d 1077, 1084 (11th Cir. 2008) (quoting Goebert v. Lee Cnty., 510 F.3d 1312, 1322-23 (11th Cir. 2007)). In Ross, the Court identified three circumstances in which an administrative remedy would be considered "not available." Ross, 136 S. Ct. at 1859. First, "an

administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. Next, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id. Finally, a remedy may be unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1860.

Because failure to exhaust administrative remedies is an affirmative defense, Defendants bear "the burden of proving that [Plaintiff] has failed to exhaust his available administrative remedies." Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008). The Eleventh Circuit has articulated a two-step process that the Court must employ when examining the issue of exhaustion of administrative remedies:

> In Turner v. Burnside we established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust. 541 F.3d at 1082. First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. Id. Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust. Id. at 1082–83; see also id. at 1082 (explaining that

> defendants bear the burden of showing a failure to exhaust).

Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1209 (11th Cir. 2015).

State law "determines what steps are required to exhaust." Dimanche v. Brown, 783 F.3d 1204, 1207 (11th Cir. 2015); see also Jones, 549 U.S. at 218 (stating that "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion"). The FDOC provides inmates with a sequential grievance process for exhausting administrative remedies. See Fla. Admin. Code r. 33-103.005 through 33-103.007. Generally, to initiate the grievance process, an inmate must file an informal grievance within 20 days of "when the incident or action being grieved occurred." Fla. Admin. Code r. 33-103.011(1)(a). The responsible staff member must complete a written response to the informal grievance within 10 calendar days of receiving it. See Fla. Admin. Code r. 33-103.011(3)(a). If the inmate is dissatisfied with the response, or if time expires for the official to respond to the informal grievance, then the inmate may file with the warden or assistant warden a formal grievance within 15 days of receiving the unsatisfactory response or from the expiration of the time to respond. See Fla. Admin. Code r. 33-103.011(1)(b). If the formal grievance process does not resolve the inmate's complaint, or if time expires for the reviewing authority to respond, the inmate may proceed to the third and final step: filing an appeal to the Office of the Secretary. See Fla. Admin.

Code r. 33-103.007(1). The inmate has 15 days to file an appeal, running from receipt of the response to the formal grievance or expiration of the time for the official to respond. See Fla. Admin. Code r. 33-103.011(1)(c). Once a Florida prisoner has completed this three-step process, he is considered to have exhausted his administrative remedies. See Chandler v. Crosby, 379 F.3d 1278, 1288 (11th Cir. 2004).

## V. Analysis

Defendants request dismissal of Plaintiff's claims against them because Plaintiff failed to exhaust his administrative remedies before filing suit. See Doc. 37 at 7-11. They argue that "Plaintiff failed to file a single grievance regarding his conditions of confinement, being placed on property restriction for no reason, the use of force, and failure to protect" claims. Id. at 11. In support of their assertion, Defendants provide logs of all the informal and formal grievances Plaintiff submitted between January 2, 2019, the day the alleged incidents occurred, and January 21, 2021, the day Plaintiff filed this action. See Docs. 37-13, 39-1. They also provide copies of several grievances filed during that time. See Doc. 37-13 at 5-18; Doc. 39-1 at 5-30.

In his Response and Complaint, Plaintiff briefly describes the steps he took to exhaust his administrative remedies:

> Plaintiff started at the institutional level on the request form. Plaintiff never received receipt or response so Plaintiff continued the grievance

> procedure by filing a formal grievance to the warden. Again no receipt or response was ever provided. Plaintiff again continued the grievance procedure by filing a formal grievance to the Secretary of the Dept. of Corr. No receipt or response was ever provided so Plaintiff proceeded with this action.

Doc. 1 at 11; see also Doc. 58 at 5. Thus, read liberally, Plaintiff argues that he completed the FDOC's three-step grievance procedure and exhausted his administrative remedies. He also seems to assert that even if he did not exhaust his claims, he did not have to do so because prison officials' failure to provide him with receipts for his grievances or respond hindered his ability to exhaust and rendered the grievance procedure unavailable. Indeed, in his Response, Plaintiff argues

> The appeal and grievance logs provided by [] Defendants only show that the grievance were not processed not that [] Plaintiff didn't file any. Once [] Plaintiff pushed the grievances out of his cell to be collected by classification officers it is their responsibility to make sure the grievances make it to their appropriate destination. That responsibility rests with the grievance coordinator. As shown by the appeal and grievance logs provided by [] Defendants, [] Plaintiff is the type of inmate that grieves every aspect of his prison condition and by this incident playing a major part in that condition it was undoubtedly provided. The question is, what happened to the grievance [] Plaintiff filed.

Doc. 58 at 5-6.

Here, the Court finds that Plaintiff's allegations that he exhausted his administrative remedies and that the FDOC's failure to provide him with

grievance receipts rendered the process unavailable, taken as true, preclude dismissal of this action at the first step of Turner. See Ross, 136 S. Ct. at 1860; see also Jackson v. Griffin, 762 F. App'x 744, 746 (11th Cir. 2019) (holding disputes about availability of administrative remedies are questions of fact that can bar dismissal at Turner's first step).[3] Thus, the Court will proceed to Turner's second step and make specific findings to resolve the disputed factual issues related to exhaustion.

In resolving the disputed factual issues, the Court finds that Plaintiff did not complete the administrative grievance process in accordance with the procedures set forth in rule 33-103 of the Florida Administrative Code. Plaintiff alleges that on some unspecified date he submitted an informal grievance at the institutional level. Docs. 1 at 11, 58 at 5. The alleged events occurred on January 2, 2019, and thus, Plaintiff had until January 22, 2019, to begin the three-step grievance process by filing an informal grievance. According to the record, Plaintiff filed three informal grievances between January 2, 2019, and January 22, 2019, none of which contained allegations about the January 2, 2019, events forming his current claims. See Doc. 39-1 at

[3] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060-61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

1. First, on January 13, 2019, Plaintiff submitted an informal grievance (log # 230-1901-0088) complaining about the facility's new laundry procedure. See id. at 5. Second, on January 14, 2019, Plaintiff submitted an informal grievance (log # 230-1901-0093) complaining about Defendant Burnette making a disrespectful comment to Plaintiff on January 14, 2019. See id. at 6. Finally, on January 21, 2019, Plaintiff submitted his third January 2019 informal grievance (log # 230-1901-0138) complaining about not receiving milk with his meals. See id. at 7. As such the record shows Plaintiff took no steps to properly initiate the first step of the FDOC's grievance process with respect to the claims raised in his Complaint.

Plaintiff also alleges that on some unspecified date he submitted a formal grievance to the warden. Doc. 1 at 11. Considering the ten-day response time for any informal grievance and the fifteen-day deadline to file a formal grievance following the expiration of that response time, Plaintiff had until February 16, 2019, to file a formal grievance with the warden. According to the record, Plaintiff did not submit any formal grievances in February 2019. See Doc. 37-13 at 1. As such, the record shows Plaintiff took no steps to properly initiate the second step of the FDOC's grievance process regarding the claims in this case, even assuming he never received a response to any informal grievance. And while Plaintiff alleges that he, again on some unspecified date, submitted a grievance to the Secretary, the Court finds that the undisputed

evidence that Plaintiff did not complete the first two steps of the three-step grievance process is enough to decide the issue of exhaustion. As such, the Court finds that Plaintiff failed to exhaust his administrative remedies as to any claim in his Complaint.

To the extent that Plaintiff suggests he should be relieved of any obligation to complete the applicable grievance process because it was unavailable, that argument also fails. He asserts that the record is void of any evidence that he exhausted his administrative remedies because grievance officials failed to log his grievances, declined to provide him with receipts after he submitted his grievances, and refused to respond. According to Plaintiff, once he submits grievances, "it is the [classification officers'] responsibility to make sure the grievances make it to their appropriate destination." Doc. 58 at 5. However, Plaintiff's assumption that officials refused to log or document Plaintiff's grievances about these claims does not amount to the type of intimidation that would render a grievance process unavailable. "While the burden is on [] [D]efendant to show an available administrative remedy, once that burden has been met, the burden of going forward shifts to [] [P]laintiff, who, pursuant to Turner, must demonstrate that the grievance procedure was 'subjectively' and 'objectively' unavailable to him." Geter v. Baldwin State Prison, 974 F.3d 1348, 1356 (11th Cir. 2020) (citing Turner, 541 F.3d at 1085). Of import, the Court may "consider[] [Plaintiff's] history of filing grievances as

evidence that [] [D]efendants did not make administrative remedies unavailable to him or . . . destroy his grievances." Whatley v. Smith, 898 F.3d 1072, 1083 (11th Cir. 2018).

Here, Plaintiff has an extensive record of filing grievances. Indeed, he admits that he is the "type of inmate that grieves every aspect of his prison condition[s]," and the record evidence supports that statement. Doc. 58 at 5. The evidence shows that between the date of the alleged incident (January 2, 2019) and the date he filed this action (January 21, 2021), Plaintiff submitted seventy-four informal grievances, Doc. 39-1 at 1-4, and fifty-eight formal grievances, Doc. 37-13 at 1-4. None of those 132 grievances contained any allegations involving the January 2, 2019, claims in the Complaint. And Plaintiff's conclusory assertion that officials did not log the grievances he submitted about the January 2, 2019, events but did log these other 132 grievances during the relevant time period is unpersuasive.

The Court notes that in March 2019, Plaintiff submitted two informal grievances (log # 230-1903-0169 and log #230-1904-0002) alleging that on March 21, 2019, he witnessed Sergeant Foust take a grievance from Plaintiff's cell flap and place it in his pocket. Doc. 39-1 at 10, 13. Officials denied both grievances after interviewing Foust who stated he removed a "kite" (or prison note) from Plaintiff's cell door. Id. at 10, 13. But even if the object Foust placed in his pocket on March 21, 2019, was a grievance, Plaintiff does not argue, and

there is no evidence, that Foust's actions deterred Plaintiff from filing any future grievances. Notably, on exactly the same day that Foust allegedly pocketed Plaintiff's grievance, Plaintiff submitted his first grievance complaining about Foust's alleged actions. See Doc. 39-1 at 10. After the alleged Foust event, Plaintiff submitted 120 more grievances, four of which he submitted while still at Suwannee C.I. Doc. 37-13 at 1-4; Doc. 39-1 at 1-4. In October 2019, Plaintiff was transferred to Wakulla Annex and then to Santa Rosa Correctional Institution in November 2019. Doc. 39-1 at 1. Plaintiff continued to avail himself of the grievance process at both those facilities, yet again none of those grievances involved the events of January 2, 2019. Thus, even if Plaintiff felt Suwannee C.I. officials hindered his ability to grieve his claims, he does not allege how the grievance process was unavailable to him once he was no longer incarcerated at Suwannee C.I. See Poole v. Rich, 312 F. App'x 165, 167-68 (11th Cir. 2008) ("Even if we assume that Poole was threatened and that these threats rendered grievance procedures at Rogers [State Prison] unavailable to Poole, Poole's complaint is still due to be dismissed because he has failed to allege that grievance procedures were unavailable to him once he was no longer incarcerated at Rogers and was removed from the threats of violence made by the officials at that prison.").

Because Plaintiff was actively availing himself of the grievance procedure during the relevant timeframe, the Court finds that Plaintiff was

not deterred or thwarted from pursuing his administrative remedies. Thus, the Court finds that neither Plaintiff's allegations nor the record show that the administrative remedies were unavailable to Plaintiff. Defendants have carried their burden to show that Plaintiff failed to exhaust his administrative remedies prior to filing this case. Thus, upon review of the parties' submissions and the file, the Court finds that this case is due to be dismissed without prejudice for Plaintiff's failure to exhaust.

Accordingly, it is

**ORDERED AND ADJUDGED:**

1. Defendants' Motion for Summary Judgment (Doc. 37) is **GRANTED to the extent** it seeks dismissal for Plaintiff's failure to exhaust his administrative remedies.

2. This case is **DISMISSED without prejudice.** The **Clerk** shall enter judgment dismissing this case without prejudice, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 25 day of August, 2022.

HARVEY E. SCHLESINGER
United States District Judge

Jax-7
C: Kevin Lamar Blake, #X83762
Shirley Wilson Durham, Esq.